UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Michele J. Deubell,

                     Plaintiff,

      v.

Commissioner of Social Security,

                     Defendant.

**Decision and Order**

18-CV-935 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 6, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 7, 13.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

2

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

3

Plaintiff objects to how the ALJ addressed a disability opinion from a physician assistant, Jessica Utech ("Utech"). The ALJ found that plaintiff had type 1 diabetes mellitus, carpal tunnel syndrome, cervicalgia, anxiety disorder, and bipolar disorder as severe impairments; but that plaintiff nonetheless had the capacity for light work with restrictions. While determining plaintiff's RFC, the ALJ gave Utech's April 2017 disability opinion little weight because she was not "an acceptable medical source." [31.] Plaintiff contends that the ALJ "entirely rejected" Utech's opinion (Dkt. No. 7-1 at 16), and that Utech's opinion would have changed the disability determination. "PA Utech provided a restrictive opinion that, if credited, would have resulted in a finding of disability: she opined that Plaintiff was very limited in maintaining attention and concentration, and moderately limited in carrying out instructions, making simple decisions, and functioning in a work setting at a consistent pace. T. 1021. These functions are critical to work performance and necessary to sustain even the simplest jobs; even moderate limitations in these functions would seriously erode Plaintiff's occupational base." (*Id.* at 15.) The Commissioner responds by noting that Utech's disability opinion is a checkbox form that contains inconsistencies:

> As set forth in the decision, the ALJ observed that the form was marked to impose significant effects on Plaintiff's functioning (T24). The ALJ pointed out that despite part of the form indicating significant limitations, PA Utech stated that Plaintiff had no restrictions on working conditions or work activity (T24, 1021). Thus, the responses provided on that County form by the PA were internally inconsistent. "[W]hile the ALJ is certainly free to consider the opinion of [non-acceptable medical sources] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. Nov. 5, 2008) *citing Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983); *see* 20 C.F.R. §§ 404.1527, 416.927. The ALJ had broad discretion to evaluate and discount opinions from nonacceptable medical sources. *See Kirchoff v. Colvin*, 1:15-CV-00745 (MAT), 2016 WL 6090583, at *2 (W.D.N.Y. Oct. 19, 2016); *Basener v. Colvin*, 6:15-CV-06406 (MAT), 2016 WL 5372502, at *5 (W.D.N.Y. Sept. 26, 2016); 20 C.F.R. §§ 404.1527, 416.927. Further, the checkbox form from the County DSS is of limited evidentiary value. *See Augustine v. Comm'r of Soc. Sec.*, No. 6:15-CV-06145-EAW, 2016 WL 5462836, at *1 (W.D.N.Y. Sept. 28, 2016) (internal citations omitted) (finding that an opinion communicated via a form with minimal

4

> commentary "is not particularly useful evidence"). Accordingly, the ALJ reasonably gave little weight to that form.

(Dkt. No. 13-1 at 25.) The Commissioner additionally argues that the ALJ did give partial weight to a group opinion from Dent Neurological that Utech cosigned.

The Commissioner has the better argument. "Opinions from medical sources who are not acceptable medical sources and from nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources. Although we will consider these opinions using the same factors as listed in paragraph (c)(1) through (c)(6) in this section, not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1); *see also* SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."). Here, Utech in April 2017 completed a two-page form for the New York State Office of Temporary and Disability Assistance. [1024–25.] The form listed three medical conditions: bipolar disorder, generalized anxiety disorder, and opioid dependence. Utech filled checkboxes for plaintiff's physical and mental limitations; the checkboxes look like this:

| a.) Physical Functioning | No Evidence of Limitations | Moderately Limited | Very Limited | b.) Mental Functioning | No Evidence of Limitations | Moderately Limited | Very Limited |
|---|---|---|---|---|---|---|---|
| Walking | | | | Understands and remembers instructions | X | | |
| Standing | | | | Carries out instructions | | X | |
| Sitting | | | | Maintains attention/concentration | | | X |
| Lifting, Carrying | | X | | Makes simple decisions | | X | |
| Pushing, Pulling, Bending | | X | | Interacts appropriately with others | X | | |
| Seeing, Hearing, Speaking | | X | | Maintains socially appropriate behavior without exhibiting behavior extremes | X | | |
| Using Hands | | X | | Maintains basic standards of personal hygiene and grooming | X | | |
| Stairs or other climbing | | X | | Appears able to function in a work setting at a consistent pace | | X | |
| Other: | | | | Other: | | | |

IV. FUNCTIONAL LIMITATIONS (related to medical findings noted in Section III): *(check column that applies)*

[1025.] Utech recommended a referral to rehabilitation but noted that plaintiff had "no restrictions" on work activities. [1025.] As the Commissioner has noted, checking off limitations of any kind contradicts a conclusion that plaintiff had no limitations on work activities. Additionally, the categories of "moderately limited" and "very limited" in the state disability system might have different meanings in plaintiff's case compared to the mild, moderate, marked, and extreme categories in the Social Security system; the lack of context surrounding the checkboxes provides no clarification. *See Shipp v. Colvin*, No. 16-CV-919 HBS, 2018 WL 4870748, at *3 (W.D.N.Y. Oct. 9, 2018) ("The remainder of the checkmarks in the questionnaire come with no explanation and are too conclusory to oppose a consistent medical record. The Second Circuit has held that such standardized form opinions are only marginally useful for purposes of creating a meaningful and reviewable factual record.") (internal quotation marks and citations omitted). Under these circumstances, the ALJ had discretion as a factual matter to assign little weight to the form that Utech completed. *Cf. Ahmmed v. Comm'r*, No. 14 CV 6903 (KNF), 2016 WL 927226, at *8 (S.D.N.Y. Mar. 4, 2016) (disability assessments from physician assistants could be assigned little weight where they were "inconsistent with the results of the physical examinations they performed"); *Fairbank v. Colvin*, No. 13-CV-0083-JTC, 2015 WL 3937185, at *8 (W.D.N.Y. June 26, 2015) ("Moreover, it is clear that the ALJ did not completely reject [PA] Mr. Mizzi's findings but instead gave them some

6

weight, considering the consistency of those findings with the functional limitations incorporated into the ultimate RFC assessment.") (citation omitted). If the ALJ excessively singled out Utech's status as a physician assistant then any resulting error was harmless. Incidentally, the Court agrees with the Commissioner that assigning "little weight" to Utech's form, for whatever reason, is not the same as "entirely rejecting" the form. *Cf. Chavis v. Astrue*, No. 5:11-CV-00220 TJM, 2012 WL 6150851, at *11 (N.D.N.Y. Sept. 21, 2012) ("The ALJ's decision makes it clear that she did not 'arbitrarily disregard' PA McLaughlin's opinion. Rather, she gave it 'little weight.' (T. at 25.) Furthermore, the regulation provides that evidence from sources such as a physician assistant 'may' be used to show an impairment and the effect on a claimant's ability to work. 20 CFR 404.1513(d) and 20 CFR 416.913(d) (2012). Thus, Plaintiff is correct that the ALJ is not required under the regulations to treat PA McLaughlin's opinion as acceptable. By giving the opinion little weight, the ALJ essentially found it unacceptable."), *report and recommendation adopted*, No. 5:11-CV-220, 2012 WL 6139661 (N.D.N.Y. Dec. 11, 2012).

Next, plaintiff criticizes the ALJ for using her own judgment in the place of appropriate medical interpretations of the record when crafting the RFC. "The ALJ did not give *any* significant weight to any of the opinion evidence. Rather, the ALJ gave vague 'partial' or little weight to every opinion in this case. Critically, the *only* physical functional opinion, which came from Dr. Wilkins, was given little weight. It is thus entirely unclear upon what, if any, opinion evidence the ALJ based her specific RFC. Left with no opinion evidence supporting it, the RFC was an obvious product of the ALJ's own lay interpretation of the record." (Dkt. No. 7-1 at 17.) The Commissioner disagrees, in essence arguing that plaintiff's position leaves the ALJ no room to make reasonable inferences from available medical data. "To the contrary, the ALJ did not reject all the opinions. Rather, [t]he ALJ properly weighed the opinions, accorded them varying degrees of weight, and considered

7

all the evidence, not just opinions, in determining Plaintiff's RFC. Plaintiff's argument is not persuasive because it is both the ability and the responsibility of the ALJ to resolve conflicts in the evidence and to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole." (Dkt. No. 13-1 at 25 (internal quotation marks and citations omitted).)

On this point, plaintiff has the better argument. "While an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him." *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) (internal quotation marks and citation omitted); *see also House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) ("[A]lthough the RFC determination is an issue reserved for the commissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (internal quotation marks and citations omitted); *Goldthrite v. Astrue*, 535 F. Supp. 2d 329, 339 (W.D.N.Y. 2008) ("An ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion."). There is a difference between making independent findings and sorting through other sources' findings in a way that is consistent with the overall record. *Compare, e.g., Brennan-Kenyon v. Barnhart*, 252 F. Supp. 2d 681, 691 (N.D. Ill. 2003) ("It is established in Social Security law that an ALJ may not play doctor and substitute his own opinion for that of a physician, or make judgments that are not substantiated by objective medical evidence. In other words, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings. An ALJ will be reversed in those cases where the ALJ impermissibly played doctor by failing to address relevant evidence.") (citations omitted) *with Richardson v. Perales*, 402 U.S. 389, 399

8

(1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.") *and Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") (citing *Richardson*). Plaintiff's situation matches the former scenario more than the latter. The Court has reviewed the entire record and all of the clinical notes. To the extent that any of the treatment providers cited by the ALJ attempted to comment on whether plaintiff was "disabled" or able to work, the ALJ properly discounted those providers as opining on an ultimate issue reserved for the Commissioner. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Moreover, some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner. That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative.") (citation omitted). For functional assessments of lifting, sitting, standing, and stress, however, nothing specific appears in the record. Numerous places in the record contain notes of physical examinations showing that plaintiff had full strength in her extremities or a full range of motion, with the exception of the impact from a motorcycle accident. [*E.g.*, 306, 321, 373, 447, 498, 536, 663, 720, 724, 759.] During none of these examinations did any treatment provider interpret lifting, sitting, standing, and stress capacity from any measurements of strength, reflexes, or range of motion. *Cf., e.g., Staggers v. Colvin*, No. 3:14CV00717 SALM, 2015 WL 4751108, at *5 (D. Conn. June 17, 2015) (remand required where physician records contain raw clinical data but no physical functional assessments), *report and recommendation adopted*, No. 3:14-CV-717 JCH, 2015 WL

9

4751123 (D. Conn. Aug. 11, 2015).  Some of these treatment providers might well be more credible than others.  With no statements in the record about functional abilities, however, the Court is forced to conclude that the ALJ crossed the line between selecting credible providers and filling in where those providers were wholly silent.  The latter is not permitted and requires remand.

In ordering remand, the Court is concerned principally with making sure that any RFC be sufficiently linked to a credible physical functional assessment from an appropriate source.  An additional consultative examination might be helpful if it eventually receives controlling weight.  *See* 20 C.F.R. §§ 416.919a; 416.920b(b)(iii).  The Court takes no position on the ultimate outcome of the RFC assessment or of the overall disability determination.

### III.    CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 13).  The Court grants plaintiff's cross-motion (Dkt. No. 7) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order.  The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: November 6, 2019